640 A.2d 311

VIRGINIA SCHMITT, PETITIONER–APPELLANT, v. MAYFAIR SUPERMARKETS, INC., RESPONDENT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued March 8, 1994—Decided April 19, 1994.

Before Judges SKILLMAN and KESTIN.

*Trudy Maran* argued the cause for appellant (*Ms. Maran,* on the brief).

*Francis T. Giuliano* argued the cause for respondent (*Mr. Giuliano,* on the brief).

The opinion of the court was delivered by

KESTIN, J.A.D.

Petitioner's duties as an employee in respondent's deli department included lifting and moving heavy boxes of food. While performing such a task, petitioner suffered a left inguinal hernia requiring surgical repair. Her recovery was unremarkable and she was back at work less than three months later. About four-and-one-half months after her return to work, petitioner, while performing a similar task, suffered a right inguinal hernia. Three-and-one-half months after surgical repair of the second hernia, she was released from her surgeon's care. Petitioner did not return to her employment with respondent, however. She filed three claim petitions instead. One sought permanent disability for the first hernia; another sought permanent disability for the second hernia; and the third, as amended, embodied a claim for permanent disability based on occupational disease occasioned by repeated hernias. The claims were consolidated for the purposes of the workers' compensation hearing.

The evidence in three hearing sessions came from the testimony of petitioner herself and a physician for each party. Dr. Goodman, a specialist in internal medicine, testified for petitioner; Dr. Lohman, a specialist in orthopedic surgery, testified for respondent. Neither physician had treated petitioner.

■ It is clear from the record that petitioner had no complaints after the first hernia was repaired. She returned to work and resumed her duties. There was no evidence that after her recovery from surgery, petitioner experienced significant pain,

discomfort, or any sense of physical limitation* as a result of that injury or its aftereffects. Therefore, the Division was correct to conclude that no permanent impairment had been established in respect of the first hernia and the dismissal of that petition is affirmed.

With regard to the second hernia, petitioner testified that while lifting heavy items, she experienced a sharp pain which was later diagnosed as a second hernia, on the right side. This hernia was repaired surgically but petitioner continued to experience pain, throbbing, swelling, and other discomforts upon prolonged sitting, exertion or fatigue, and in poor weather. Acting on her surgeon's advice to seek employment that did not require heavy lifting, petitioner did not return to her job with respondent. She made plans to attend a state retraining program, but the program was eliminated for lack of funds. She became employed in other work, first selling souvenirs in a zoo and then as a part-time waitress in a pizza restaurant. The longest period petitioner had gone without pain since experiencing the second hernia was three or four days. The clear import of petitioner's testimony was that the pain and discomfort she had regularly felt since the second hernia occurred limited her working ability, her earning capacity, and her pursuit of everyday tasks.

Dr. Goodman opined in a conclusory fashion that petitioner "was suffering from bilateral indirect inguinal hernia with surgery for which she has a permanent internal medical disability of 25 percent...." The focus of Dr. Goodman's testimony was on petitioner's hernias and upon her complaints of pain and discomfort. He testified that the objective indicia of her condition were the external scars and the surgical and hospital records of petitioner's surgeries. He knew from his experience that internal scar tissue was present. Dr. Goodman testified that the hernias

---

* There was some testimony from petitioner that she was apprehensive about continuing to lift heavy items. Her manager suggested that she " '[w]ear a band'.... like a tight girdle." Petitioner did so.

were caused by the work effort, and that petitioner's complaints of pain and discomfort were "residuals of these hernias with the surgery."

Dr. Lohman, in an equally conclusory fashion, testified that he found no demonstrable medical evidence of a permanent disability, only a well repaired and well healed bilateral hernia. The external scars, in his opinion, constituted no significant disfigurement.

The workers' compensation judge summarized the medical evidence as follows:

> Dr. Goodman found that the hernias were related to her specific accidents. He found that the pain that the Petitioner complained about was in keeping with the repaired hernia. He testified that since the hernias had been operated on they were no longer existing but because of the physiology of bilateral hernias, there would be scar tissue remaining, although he admitted that he could not see the scar tissue but it was because of this that he found the permanent disability.

> Dr. Lohman testified on behalf of the Respondent and Dr. Lohman testified that there was no demonstrable objective medical evidence of any disability restricting the function of the Petitioner's body. That the only objective findings he could find were scars that did not in any way restrict the function of the Petitioner's body.

The judge went on to deny petitioner's claim, holding that her condition was not a permanent disability within the intendment of *N.J.S.A.* 34:15–36 as interpreted by *Perez v. Pantasote, Inc.*, 95 *N.J.* 105, 469 *A.*2d 22 (1984). The judge concluded that there had been no adequate showing of "demonstrable objective medical evidence of permanent impairment which restricts the function of the body or any of its members or organs," which he articulated as the basic criteria to be satisfied. Dr. Goodman was depicted as testifying that petitioner's scars were the only objective evidence he could find of limitations on her ability to work or otherwise function as a human being.

We regard the workers' compensation judge to have erred in applying the statutory criteria found in *N.J.S.A.* 34:15–36. Accordingly, as to the remaining petitions, we reverse and remand for further proceedings.

■ This is not a case where, because no visible signs of physical damage exist, there can be any question whether a

petitioner actually suffered a serious, work connected injury. *See, e.g., Perez v. Pantasote, Inc., supra.* The facts relating to this petitioner's injuries and the surgical procedures made necessary by them came into the record through the testimony of petitioner and her medical expert, Dr. Goodman. *See N.J.R.E.* 703 (formerly *Evid.R.* 56(2)). These alone were sufficient verification that a work connected physical injury had occurred.

■ Nor can it be said that there was no evidence to establish that the frequent pain and discomfort experienced by petitioner since her second surgery was a result of the injury or the surgery, restricted the function of her body, and was permanent. Some such evidence was present through Dr. Goodman's testimony taken as a whole, but, unfortunately, no direct questions in these respects were asked. Nevertheless, after a general foundation was established, Dr. Goodman did testify, albeit in a conclusory fashion, that petitioner had a "permanent internal medical disability of 25 percent. . . ."

In these ways, it was established that an objectively ascertainable, work connected injury requiring surgery had occurred; and Dr. Goodman's evaluation, including that petitioner's complaints were "residuals of these hernias and the surgery," no matter how unartfully elicited and incompletely stated, was enough to establish that the condition which caused the pain and discomfort was demonstrably objective in the medical sense, limited petitioner's physical movements in specific ways, and was permanent. Although medical testimony explaining specifically how petitioner's continuing pain and discomfort was related to her internal condition following the hernia surgery would have clarified the matter, we do not view the record as devoid of any essential element. In the absence of a clear credibility finding or weight of the evidence determination rejecting Dr. Goodman's expert opinion or petitioner's testimony that the continuing pain and discomfort she experienced lessened her working ability to a material degree or impaired her in carrying on the ordinary pursuits of life, *Perez v.*

*Pantasote, Inc., supra*, 95 *N.J.* at 116–17, 469 *A.*2d 22, the proofs constituted an adequate basis for an award.

It will not do in such matters to consider patients with repaired hernias as generically excluded from eligibility for permanency awards. Each case must be considered on its particular merits. While it may be that the vast majority of hernia repairs are completely restorative and accomplished without complications, there are instances where, for one reason or another, the surgery is unsuccessful or itself produces sequelae which render a patient permanently impaired as defined by statute. The Division must be prepared to identify such instances that eventuate from work connected injuries and provide awards appropriate to the specific cases.

The Division's determination dismissing claim petition 90–003007 is affirmed. The dismissal of claim petitions 90–003002 and 90–002993 is reversed and the matter is remanded for further proceedings conforming with this decision.